IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| MATTHEW J. HILGEFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08CV669 |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURG, PA. and | ) | |
| AMERICAN INTERNATIONAL | ) | |
| GROUP, INC. (AIG), | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE OF MOTION AND
MOTION TO QUASH
SUBPOENA *DUCES TECUM* FOR HEALTH RECORDS**

COME NOW the defendants National Union Fire Insurance Company of Pittsburg, PA ("National Union") and American International Group, Inc. ("AIG, Inc."), by counsel, and respond to the plaintiff's Notice of Motion and Motion to Quash Subpoena Duces Tecum for Health Records as follows:

**I.    STATEMENT OF FACTS.**

The plaintiff has filed suit seeking damages based on the allegation that National Union and AIG failed to pay him benefits under his accident insurance policy through National Union ("the Policy"). The plaintiff asserts in his Complaint and in his Answers to Defendant National Union's Requests for Admissions that he is permanently disabled due to paralysis of his upper and lower extremities on his right side and face. *See* Complaint ¶ 8; Ex. 1 (Response number 7 of Plaintiff's Answers to Defendants' Requests for Admission). The plaintiff alleges that under

the Policy, he is entitled to insurance benefits totaling $1,030,000.00. A copy of the Policy was attached as Exhibit 1 to defendant AIG's Motion to Dismiss dated October 17, 2008.

## II. ARGUMENT.

### PLAINTIFF'S MOTION TO QUASH DEFENDANT'S SUBPOENA DUCES TECUM FOR HEALTH RECORDS SHOULD BE OVERRULED.

The Policy states that in order for a insured to be deemed "permanently totally disabled" he must:

> a) have suffered one of six specific conditions set forth in the Policy,[1] b) must be permanently unable to perform the material and substantial duties of any occupation for which he is qualified by reason of education, experience, or training, *and* c) must be under the supervision of a physician unless he has reached his maximum point of recovery.

*See* Exhibit 2 (Policy endorsements S30417DBG and S30424DBG).

In his Answers to Defendant's Requests for Admission, the plaintiff denies suffering from any of the six conditions listed in the Policy except for hemiplegia. *See* Ex. 1 (Plaintiff's Answers to Defendant's Requests for Admission numbers 7, 8, 9, 10, 13, 14, 15). "Hemiplegia" is defined in the Policy as "the complete and irreversible paralysis of the upper and lower limbs of the same side of the body (Exhibit 2). 'Limb(s)' means entire arm or entire leg." *Id.*

The Policy discusses when an individual will be deemed "permanently totally disabled" as a result of an injury. *Id.* Specifically, the Policy states the following:

> **Permanent Total Disability Benefit (Month Benefit)...** If, as a result of an injury, the Insured is rendered Permanently Totally Disabled within 90 days of the accident that caused the Injury, and if the Permanent Total Disabled due to that Injury continues for a period of 6 consecutive months, the Company will pay

---

[1] Under the Policy, the plaintiff must suffer from one of the following six conditions:
- loss of both hands or feet
- loss of one hand and one foot
- loss of sight in both eyes
- hemiplegia
- paraplegia
- quadriplegia

*See* Policy endorsements S30417DBG and S30424DBG (Exhibit 2).

> a monthly benefit equal to the Permanent Total Disability Monthly Benefit
> shown in the Benefits Schedule starting with the 7th consecutive month.
>
> * * *
>
> **Permanent Total Disability Benefit (Lump Sum)**. . . If, as a result of an injury,
> an Insured is rendered Permanently Totally Disabled within 90 days of the
> accident that caused the injury, the Company will pay 100% of the Permanent
> Total Disability (Single Payment) Maximum Amount shown in the Benefit
> Schedule at the end of 12 consecutive months of such Permanent Total
> Disability.

The Policy further defines "injury" as a bodily injury:

> (1) which is sustained as a direct result of an unintended, unanticipated accident
> that is external to the body and that occurs while the injured person's coverage
> under this Policy is in force; (2) which occurs while such person is participating
> in a Covered Activity; and (3) which directly (independent of sickness, disease,
> mental incapacity, bodily infirmity or any other cause) causes a covered loss.

Exhibit 3 (Policy description of coverage) at p. 2.

The Policy specifically excludes a number of activities including, but not limited to, the following: (1) the insured's commission of or attempt to commit a felony, (2) the insured being under the influence of intoxicants, (3) the insured being under the influence of drugs unless taken under the advice of and as specified by a physician, (4) the medical or surgical treatment of sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from the treatment, (5) stroke or cerebrovascular accident or event, (6) cardiovascular accident or event, (7) myocardial infarction or heart attack, or (8) coronary thrombosis aneurism. *Id.* at p. 4.

It is significant that in Plaintiff's Fed. R. Civ. P. 26 Initial Disclosures, the plaintiff failed to identify *any* health care provider who opined that the plaintiff had hemiplegia or produce *any* medical records indicating that he had hemiplegia. Likewise, in his Answers to Requests numbers 4-6 of Defendant's First Requests for Admission (Exhibit 1), the plaintiff *concedes* that

he does not have any medical records from his health care providers who state that he suffers from the complete and irreversible paralysis of the upper and lower limbs of the same side of his body. *See* Ex. 1 (Plaintiff's Answers numbers 4-6).

Moreover, the plaintiff voluntarily produced in his Initial Disclosures document production two letters from plaintiff's prior attorney, John Mann. In the first letter, a copy of which is attached as Exhibit 4, attorney Mann wrote to the Veterans Affairs ("VA") Regional Counsel asking for a medical opinion from plaintiff's VA doctor, Dr. Garcia, as to whether the plaintiff suffers from hemiplegia or paraplegia as defined in the Policy. In the second letter to the plaintiff, a copy of which is attached as Exhibit 5, attorney Mann told the plaintiff:

1) that he had spoken with Dr. Garcia that day regarding plaintiff's condition;

2) that Dr. Garcia advised him that plaintiff did not have hemiplegia, which is complete paralysis;

3) that Dr. Garcia described plaintiff's condition as a weakness on his side; and

4) that the plaintiff did not appear to be covered by the Policy.

In his Answers to Requests numbers 1-3 of Defendant's Requests for Admission (Exhibit 1), the plaintiff does not dispute the authenticity of either letter from attorney Mann. In fact, in Answer to Request No. 3, plaintiff does not even dispute Dr. Garcia's medical opinion that he does not have hemiplegia. Instead, he merely states that "Dr. Garcia's summation is her own interpretation of [his] condition." *Id.*

Thus, to date, the *only* information or documentation that has been produced by the plaintiff shows that his VA doctor, Dr. Garcia, has opined that he does not have hemiplegia; that *none* of plaintiff's health care providers has opined that he has hemiplegia; and that plaintiff has

*no* medical record showing that any of his health care providers have opined that he has hemiplegia.

In an effort to discover the plaintiff's medical condition in order to adequately defend themselves against this multi-million dollar lawsuit, the defendants issued a single subpoena to MRI of Richmond, which was a health care provider identified in plaintiff's medical records. *See* Exhibit 6. The subpoena fully complies with the requirement of Virginia Code § 32.1 – 127.1:03 in that it properly protects the plaintiff. However, the requested information is highly relevant to the defense of this case and may lead to discoverable evidence. In particular, the MRI may reveal that the plaintiff's medical condition at issue in this litigation may be due to a condition that is not covered or is specifically excluded by the terms of the Policy. The MRI may also provide information necessary for a medical expert to investigate the plaintiff's alleged hemiplegia.

The plaintiff has no privilege whatsoever to keep defendants from obtaining his medical records when he makes a claim that he is disabled due to his physical injuries. "[M]edical reports of a plaintiff in a civil action are not protected by the physician/patient privilege if the plaintiff's physical or mental condition is at issue." *Wiggins v. Fairfax Park Limited Partnership*, 22 Va. App. 432, 441, 470 S.E.2d 591, 596 (1996) (citing *City of Portsmouth v. Cilumbrello*, 204 Va. 11, 15, 129 S.E.2d 31, 34 (1963) and Virginia Code § 8.01-399(B)).

In an effort to determine if there was *any* medical support whatsoever for the plaintiff's purported claim of hemiplegia, the defendants requested that the plaintiff sign an authorization so that they could obtain his complete medical and disability benefits file from the VA. After all, according to the plaintiff, the only health care providers who have treated him are those at the VA Hospital. However, the plaintiff refused to sign that VA authorization and wants to bar

defendants from obtaining any medical records beyond those which he wants to furnish to defendants. As a result, the defendants are expected to request the Court to enter an Order so that the defendants can obtain these VA records. Once received, the defendants hope to determine the onset of the plaintiff's condition, the cause of the plaintiff's condition, and whether the plaintiff's condition was the result of excluded events under the terms of the Policy.

Accordingly, defendants submit that the Plaintiff's Motion to Quash the subpoena duces tecum for his medical records from MRI of Richmond is devoid of merit and should be denied so that defendants can obtain the necessary discovery of plaintiff's alleged disability claim.

## III. CONCLUSION.

For the foregoing reasons, the defendants National Union Fire Insurance Company of Pittsburg, Pa. and American International Group, Inc., by counsel, respectfully request that the Court deny the plaintiff's Motion to Quash Subpoena Duces Tecum for Health Records and to award them such further relief as the Court may deem appropriate.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA.
and
AMERICAN INTERNATIONAL GROUP, INC.

By Counsel

s/ Robert B. Delano, Jr.
Virginia Bar Number: 20619
Attorney for defendant
SANDS ANDERSON MARKS & MILLER
801 East Main Street, Suite 1800 (23219)
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Fax: (804) 783-2926
e-mail: CDelano@SandsAnderson.com

# CERTIFICATE OF SERVICE

I hereby certify that on the ___5th___ day of December 2008, I electronically filed the foregoing Defendants' Response To Plaintiff's Notice of Motion and Motion To Quash Subpoena *Duces Tecum* For Health Records with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Matthew J. Hilgeford
5812 Christopher Lane
Richmond, Virginia 23226
*Pro Se Plaintiff*


___/s/___
Robert S. Delano, Jr. (VSB No.: 20619)
*Attorney for defendants*
SANDS ANDERSON MARKS & MILLER
801 East Main Street, Suite 1800 (23219)
P.O. Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Telefax: (804) 783-2926
CDelano@SandsAnderson.com