UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FEB - 6 2009

CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

MATTHEW J. HILGEFORD,

Plaintiff,

v.  Action No. 3:08-CV-669

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, ET AL.,

Defendants.

MEMORANDUM OPINION

THIS MATTER is before the Court on myriad motions: (1) Plaintiff's Motion In Limine to Exclude Evidence and/or Statements Concerning Activities of Plaintiff before the Relevant Events in this Case (Docket No. 15); (2) Plaintiff's Motion to Quash Subpoena Duces Tecum (Docket No. 16); (3) Motion to Dismiss Amended Complaint by Defendants National Union Fire Insurance Company of Pittsburgh ("NUFIC") and American International Group, Inc. ("AIG, Inc.") (Docket No. 20); (4) Motion to Produce Veterans Affairs Records by Defendants NUFIC and AIG, Inc. (Docket No. 25); (5) Motion to Dismiss by Defendant Bank of America ("BOA") (Docket No. 38); and (6) Plaintiff's Motion to Compel Discovery (Docket No. 41). For the reasons that follow, the Court will GRANT Defendants' Motions to Dismiss and DISMISS all other Motions as MOOT.

## I. *BACKGROUND*

This cause of action arises out of a dispute over Defendants' refusal to pay Plaintiff benefits he alleges they owe him pursuant to a "Blanket Accident Insurance Policy"

1

purchased from NUFIC (see NUFIC's Mem. Supp. Mot. Dismiss Ex. 1) (the "Policy"). Apparently, Plaintiff learned of the Policy from correspondence sent to him by Bank of America, N.A. through its "Customer Years® Reward Program" ("BOA Letter"). (Pl.'s Am. Resp. Mot. Dismiss Am. Compl., Ex. 12, at 1.) The BOA Letter states, "You, a loyal customer, deserve rewards with greater everyday value. Rewards that can really help your family, especially in the event of unexpected financial difficulty." (Id.) Referencing the fact Plaintiff had been a customer for four years, the BOA Letter details "valuable accident insurance coverage" that would pay benefits directly to Plaintiff for "covered Hospitalization, At-Home Recovery, Emergency Room Visits—plus Accidental Death." (Id.) The BOA Letter identifies NUFIC as the underwriter, states the insurance products are "NOT GUARANTEED BY THE BANK," and lists certain "Exclusions," including "stroke, cerebrovascular or cardiovascular accident or event, myocardial infarction or heart attack, coronary thrombosis, or aneurysm." (Id. at 1-2.) Some time after receiving the BOA Letter,[1] Plaintiff purchased the Policy, which promised eligible claimants a monthly benefit of five thousand dollars per month for six months and a lump payment of one million dollars, if they remained disabled six months after the covered injury occurred.

According to Plaintiff, on November 8, 2006, an unidentified male assaulted Plaintiff as he walked near the 400 block of West Grace Street in Richmond, Virginia. The assailant grabbed Plaintiff's cane and repeatedly struck him about the head with it. Despite the assault, Plaintiff managed to return to his vehicle and drive to a police station a short

---

[1] Plaintiff does not indicate when he purchased the Policy—only that he purchased it prior to the attack detailed below. (See Am. Compl. ¶ 10.)

2

distance away where he summoned help. Subsequently, Plaintiff arrived at the McGuire Veterans Hospital emergency room.[2] While in the hospital over the next few days, Plaintiff suffered a series of strokes which Plaintiff claims had permanent disabling effects, including paralysis of the right side of his body. Due to this hemiparesis, Plaintiff has not been able to return to work. Thereafter, Plaintiff filed a claim believing the Policy covered his injury.

In a letter from AIG Claim Services, Inc. dated November 5, 2007 ("AIG Letter"), AIG Claim Services informed Plaintiff that his claim had been denied. (Pl.'s Am. Resp. Mot. Dismiss Ex. 11.) The AIG Letter recounts the events leading to Plaintiff's hospitalization, the fact Plaintiff had refused medical treatment, and that he had later come to the emergency room complaining of slurred speech. In addition, the letter discusses a CT scan Plaintiff had received and various neurological findings cited from his medical records. Finally, the AIG Letter states doctors had diagnosed a "stroke and infarct in the left halamus," "MRI scans show[ed] evidence of old lacunar infarcts," and "medical records received [did] not indicate any evidence that there was any permanent disability or any injury to the brain as a result of the assault." (AIG Letter 1-2.) Thus, AIG Claim Services, Inc. denied Plaintiff's insurance claim.[3] Notwithstanding the denial, Plaintiff has sent "numerous demand letters" for

---

[2] It is unclear whether Plaintiff went directly to the hospital from the police station or reported to the hospital on a different day. The letter discussed below suggests the latter.

[3] Although the parties do not cite it, the Policy, as stated in the BOA Letter, includes a provision entitled "EXCLUSIONS," which states, "No coverage shall be provided under the Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks. . . . (11) stroke or cerebrovascular accident or event . . . ." (Policy 5.)

payment on the Policy but has received no such payment.[4] (Am. Compl. ¶ 13.)

Plaintiff filed his Complaint against NUFIC and AIG, Inc. in the Circuit Court for the City of Richmond on October 16, 2008. Based upon diversity jurisdiction, Defendants AIG, Inc. and NUFIC removed the matter to this Court and moved to dismiss the case. Subsequently, the Court granted Plaintiff leave to amend the Complaint. In the Amended Complaint, Plaintiff added BOA as a party and alleged violations of "procedural due process,"[5] the Consumer Protection Act ("CPA"), the Fair Debt Collection Practices Act ("FDCPA"), as well as bank fraud, mail fraud, and Racketeer Influenced and Corrupt Organizations Act ("RICO") violations. In addition, the Amended Complaint alleges violations of the Virginia Unfair Insurance Practices Act ("VUIPA") and the Virginia Consumer Protection Act ("VCPA").

NUFIC, AIG, Inc., and BOA moved to dismiss the Amended Complaint, and the various other Motions cited above ensued.

## II. *LEGAL STANDARD FOR MOTION TO DISMISS*

"It is settled law that the allegations of [a pro se] complaint, 'however inartfully

---

[4] Plaintiff attached to the Amended Complaint letters to BOA dated November 10, 2008 and November 15, 2008; to AIG, Inc. dated January 8, 2008, October 27, 2008, November 8, 2008, and November 10, 2008; and to NUFIC dated October 28, 2008, November 8, 2008, and November 10, 2008 (collectively, the "Demand Letters").

[5] It is unclear whether or not Plaintiff actually attempts to raise a procedural due process claim. In the Amended Complaint, he states, "The Plaintiff laid claim by following *procedural due process* sending the Defendant's numerous demand letters for payment of the Plaintiff's policy. However, the Defendants made no such payment." (Am. Compl. ¶ 13 (emphasis in original).) The claim is discussed infra Part III.A. in case Plaintiff in fact intends to assert such a claim.

pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers. . . .'" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Thus, "[a] document filed pro se is 'to be liberally construed . . . .'" Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2201 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). Despite any liberal construction of pro se pleadings, "courts are not required to 'conjure up questions never squarely presented to them.'" Adkins v. Mathews, Nichols & Assocs., LLC, 2008 WL 565101, at *2 (W.D. Va. Feb. 29, 2008) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985)). Moreover, pro se pleadings are not exempted from the Federal Rules and the case law interpreting them.

A motion to dismiss tests the legal sufficiency of a complaint. Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). In considering a 12(b)(6) motion, the Court must "take the facts in the light most favorable to the plaintiff," but it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (citing E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). Moreover, the Court need not "accept as true a legal conclusion couched as a factual allegation." Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Likewise, the Court cannot simply accept a plaintiff's declaration of a legal claim's essential elements; elements of a claim are not "facts" and need not be accepted as true. Id. In order to survive dismissal for failure to state a claim, a plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

Discussing the pleading standard applicable to claims under Rule 8—which requires, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief"—the Supreme Court advises that "[l]abels and conclusions," simply, "will not do." Twombly, 127 S. Ct. at 1959. The Complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. 1965. Claims of fraud, however, must satisfy a more stringent pleading standard. "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). The Fourth Circuit has counseled that Plaintiff, in order to satisfy this heightened pleading standard, must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Savannah Westinghouse River Co., 176 F.3d 776, 783-84 (4th Cir. 1999).[6] Failing to satisfy the pleading requirements under the applicable rule necessitates dismissal of the claim.

---

[6] In Harrison, the Fourth Circuit also identifies four purposes Rule 9(b) serves: "First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . ; [s]econd, . . . to protect defendants from frivolous suits[;] third . . . to eliminate fraud actions in which all the facts are learned after discovery[; and to] protect[] defendants from harm to their goodwill and reputation." 176 F.3d at 784.

## III. *DISCUSSION*

The Court will GRANT the Motions to Dismiss because Plaintiff cannot raise claims under the CPA, FDCPA, the bank fraud statute, the mail fraud statute, or VUIPA and fails to allege facts necessary to sustain all other claims.[7]

### A. Procedural Due Process Claim

To the extent that Plaintiff attempts to allege violation of due process, the claim fails. Plaintiff has failed to plead state action—the linchpin of due process claims since the Supreme Court's Nineteenth Century holding in The Civil Rights Cases, 109 U.S. 3 (1883). See Afanwi v. Mukasey, 526 F.3d 788, 798 n.40 (4th Cir. 2008) ("[T]he Constitution applies only to the federal government which it creates and, via the Fourteenth Amendment and certain other clauses, to the governments of the several states. . . . [R]ights guaranteed by the Constitution 'cannot be impaired by the wrongful acts of individuals, unsupported by state authority. . . .'") (quoting The Civil Rights Cases, 109 U.S. at 17). Nothing in the Amended Complaint remotely suggests the involvement of any government actor in the denial of Plaintiff's insurance claim. This is a pernicious flaw. Thus, any putative claim for procedural due process necessarily fails.

### B. CPA and FDCPA Claims

Plaintiff fails to state a claim based upon the Consumer Protection Act or the Fair Debt Collection Practices Act. Plaintiff provides no allegation that remotely implicates either

---

[7] Plaintiff cites in the Second Amended Response Virginia's Business Conspiracy statute, which was not previously raised in the Amended Complaint. (See 2d Am. Resp. 7 (citing Va. Code Ann. § 18.2-499).) The Court finds no merit in the arguments and, therefore, need not address the statute.

of these federal statutes, and no private rights of action exists for the claims that he seeks to advance under either statute.

Congress passed the CPA because "economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit," which results "from an awareness of the cost thereof by consumers." 15 U.S.C. § 1601(a) (2006). Congress opted primarily for administrative enforcement of the CPA. See id. § 1607 (2006); see also Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81 (8th Cir. 1971) ("The language of . . . 15 U.S.C. § 1607 and the legislative history evinces that Congress intended that the Act be enforced primarily by administrative agencies.").[8]

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (2006). As it did with the CPA, Congress primarily opted for administrative enforcement of the FDCPA. See id. § 1692l (2006).

---

[8] Congress provided a private right of action "by an aggrieved debtor under specific circumstances," not applicable under the present facts. See Jordan, 442 F.2d at 81 (referring to 15 U.S.C. § 1640, which provides a private right of action where a creditor fails to inform a consumer of the right to rescind a credit transaction under certain circumstances); accord Mason v. Gen. Fin. Corp. of Va., 542 F.2d 1226, 1228 (E.D. Va. 1976) ("The Congress provided various methods of enforcement. . . . In § 1640 of the Act the Congress effectively made every borrower a potential prosecutor against every money lender"). Clearly, the transaction at issue here does not fall within § 1640's ambit.

In support of the CPA and FDCPA claims, the Amended Complaint only states that Plaintiff sent "numerous demand letters for payment of the Plaintiff's policy. However, the Defendants made no such payment." (Am. Compl. ¶ 13.) This allegation, taken as true, does not suggest any Defendant failed to disclose credit terms or inaccurately or unfairly billed Plaintiff for any credit extended to him. The CPA is inapposite. To the extent that Plaintiff considers himself a "debt collector," Plaintiff does not qualify as such as defined by the FDCPA, and, more importantly, the statute itself precludes its use by debt collectors against debtors. See 15 U.S.C. §§ 1692a(6) (defining "debt collector"), 1692i(b) ("Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.").[9] Clearly, FDCPA cannot provide a remedy for the alleged wrong Plaintiff has suffered. Thus, any claims based upon these federal statutes will be dismissed.[10]

### C. Mail Fraud and Bank Fraud, and RICO Claims

It appears Plaintiff has alleged mail fraud and bank fraud as stand-alone claims and as predicate acts supporting a civil RICO claim.

---

[9] The Court notes that Plaintiff filed, without leave of court, a response to Defendants' Reply briefs ("Pl.'s 2d Am. Resp."). Along with that impermissible response, Plaintiff attached a document dated July 18, 2001, which states Plaintiff was "the sole owner of the business named or styled as Matthew J. Hilgeford conducting business at 5812 Christopher Lane, Richmond, VA." (Pl.'s 2d Am. Resp. Unnumbered Ex.) It appears Plaintiff did so in support of the "business conspiracy" claim not included in the Amended Complaint. (See Pl.'s 2d Am. Resp. 7 ("While it is known that the Plaintiff Matthew J. Hilgeford, was in fact the insured[,] it was the actions of the Defendants, which caused irreparable damage to Matthew J. Hilgeford, Inc., a company who's [sic] stocks are solely owned by the Plaintiff Matthew J. Hilgeford.").) Even accepting the existence of Plaintiff's "corporation" as true, Plaintiff nowhere alleges that this "corporation" qualifies as a "debt collector" under the FDCPA.

[10] As Defendant BOA points out, Plaintiff may be asserting Virginia's Consumer Protection Act ("VCPA"). That statute is discussed infra in Part III.G.

9

1.   Mail Fraud and Bank Fraud as Stand-Alone Claims

Neither the mail fraud statute, 18 U.S.C. § 1341, nor the bank fraud statute, 18 U.S.C. § 1344, provides Plaintiff a stand-alone civil cause of action; they are both criminal statutes. See, e.g., Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) ("The Supreme Court historically has been loath to infer a private right of action from a bare criminal statute. . . .") (internal quotation marks omitted); Williams v. Hinson, No. 6:07-1577, 2008 WL 320146, at *3 (D.S.C. Jan. 30, 2008) (no federal question jurisdiction existed since § 1344 does not create a private right of action); Milgrom v. Burstein, 374 F. Supp. 2d 523, 528-29 (E.D. Ky. 2005) (no private right of action for violation of § 1344); Bajorat v. Columbia-Breckinridge Dev. Corp., 944 F. Supp. 1371, 1378 (N.D. Ill. 1996) (same); Park Nat'l Bank of Chicago v. Michael Oil Co., 702 F. Supp. 703, 704 (N.D. Ill. 1989) (same). The stand-alone claims fail, therefore, as a matter of law. Thus, both the mail fraud and bank fraud claims, to the extent they are pleaded independently of the RICO claim, will be dismissed.

2.   RICO Claim

Notwithstanding the necessary dismissal of the independent fraud claims, the Court must evaluate whether Plaintiff has stated a valid claim for civil RICO. He has not. In order to state a valid claim under RICO, Plaintiff must sufficiently allege the existence of either a "pattern of racketeering activity" or "collection of unlawful debt." See 18 U.S.C. §§ 1962 (2006). Plaintiff has attempted to plead both mail fraud and bank fraud, which are included within the definition of "racketeering activity," but he fails to satisfy Rule 9(b). In support of

both mail fraud and bank fraud, the Amended Complaint only states, "[T]he Defendants entered into a mutual agreement to sell insurance policies to patrons of Bank of America, NA and in doing so to enrich themselves and to deprive the Plaintiff of such benefits of the insurance policy." (Am. Compl. ¶ 14.) Each of the alleged predicate acts of racketeering activity will be discussed in turn.

### a. Mail Fraud as a Predicate Offense

Plaintiff fails to provide allegations, sufficient under Rule 9(b), to support the elements of mail fraud: "(1) a scheme disclosing an intent to defraud, and (2) the use of the mails in furtherance of the scheme." Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 336 (4th Cir. 1996) (citing Pereira v. United States, 347 U.S. 1, 8 (1954)).

Taking the second element first, Plaintiff fails to allege use of the mails in the Amended Complaint, as required by Chisolm. However, as counseled by Pardus, 127 S. Ct. at 2201, the Court may construe the pleadings liberally to include the use of the mails element based upon Plaintiff's inclusion of several letters as exhibits.

More significantly, however, Plaintiff does not identify a "scheme to defraud." As Harrison counsels, in order to satisfy Rule 9, Plaintiff must state "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 176 F.3d at 783-84. In Plaintiff's Second Amended Response, he attempts to demonstrate the elements have been satisfactorily alleged and, in fact, supplies information missing from the Amended Complaint. However, even with the additions contained in this document, Plaintiff does not

satisfy the standard.

Time, location, and the identity of the persons who perpetrated the fraud have not been pleaded amply. First, Plaintiff states the fraud occurred "on or about November 08, 2006." (Pl.'s 2d Am. Resp. 9.) This date cannot support a misrepresentation claim; this is the same date Plaintiff allegedly fell prey to the attack that landed him in the hospital and eventually formed the basis of his claim upon the Policy. (See Am. Compl. ¶ 6.) Next, Plaintiff does not even attempt to allege the location where the scheme to defraud occurred. Further, Plaintiff fails to allege, in the Amended Complaint, the identity of the individuals involved in the alleged misrepresentation: Plaintiff only identifies the business entities named as Defendants as the individuals involved in the scheme to defraud.[11] (Pl.'s 2d Am. Resp. 9.) This Court has stated previously that a complaint should "provide Defendant with sufficient information so that it may determine who made the alleged misrepresentations." Tidewater Beverage Servs., Inc. v. Coca Cola, Inc., 907 F. Supp. 943, 946 (E.D. Va. 1995). Neither the Amended Complaint nor the statements in the Second Amended Response do so.

With regard to the content of the alleged misrepresentation, Plaintiff only identifies "[t]he insurance Policy received upon acceptance," which he clarifies misled him as to what "Permanently Totally Disabled/Permanent Disability means" in order to obtain the

---

[11] Elsewhere in the Second Amended Response citing Virginia Code § 38.2-503, Plaintiff names a BOA employee who apparently "was not licensed as an agent and/or insurer to sell and/or provide insurance in the Commonwealth of Virginia." Plaintiff nowhere states this employee participated in any scheme to defraud via the mails, and Plaintiff has identified no authority which indicates § 38.2-503 qualifies as a predicate act supporting a civil RICO violation. (See Pl.'s 2d Am. Resp. 6-7.)

"[f]inancial resources of the plaintiff (i.e. Money)." (Pl.'s 2d Am. Resp. 9.) In sum, Plaintiff suggests a fraud claim can be supported by stating that Defendants somehow misled him with statements made *after* he purchased the Policy.[12] The assertion is implausible. At best, the Amended Complaint identifies only Plaintiff's misapprehension of the Policy and disagreement with the denial of his insurance claim. That is insufficient. Plaintiff identifies nothing in the Policy that states an assault such as the one he suffered, although unfortunate, triggers the Policy.[13] Plaintiff has nowhere stated that Defendants represented to him that the conditions or exclusions plainly written in the Policy—and identified in the BOA Letter—did not apply to him. Plaintiff cannot state any "misrepresentation" solely based on either an ex ante misunderstanding of the Policy's conditions and exclusions or an ex post

---

[12] Plaintiff alleges he was covered by the insurance policy before the attack on November 8, 2006. (Am. Compl. ¶ 10.) However, Plaintiff also alleges that the misrepresentation took place on November 8, 2006. (Pl.'s 2d Am. Resp. 9.) If Plaintiff was covered by the Policy prior to the attack, he must have purchased the Policy at some point prior to November 8, 2006—the date on which the alleged misrepresentation took place. Thus, the putative misrepresentation took place after Plaintiff purchased the Policy.

[13] The language in the AIG Letter tracks the language in the Policy and the BOA Letter which, prior to Plaintiff's purchase of the policy, revealed that benefits would only be paid for "*covered* Hospitalization, At-Home Recovery, Emergency Room Visits" and even pointed Plaintiff's attention to the summary of coverage enclosed with the letter that explained which injuries the policy did not cover. (BOA Letter 1-2 (emphasis added); cf. Policy 5; AIG Letter 2-3.) Moreover, both the BOA Letter and the Policy state exclusions that preclude recovery to Plaintiff if the permanent disability resulted from the strokes he suffered before, during, or after hospitalization. (See BOA Letter 2 (identifying "Covered Activities—including accidents involving a motor vehicle while driving or riding as a passenger, standing or walking on a public street, or while a passenger of a common carrier—and "Exclusions"— including "stroke, cerebrovascular accident or event, myocardial infarction or heart attack, coronary thrombosis, or aneurysm"); Policy 5 (same).) Thus, before Plaintiff purchased the insurance, he was on notice that the Policy only covered certain injuries and excluded others.

disagreement with the denial of his claim. The Amended Complaint simply does not sustain a claim of fraud; there is no cognizable misrepresentation. Thus, mail fraud cannot provide a basis for Plaintiff's proposed RICO claim.

### b. Bank Fraud as a Predicate Offense

The bank fraud claim cannot provide a basis for the civil RICO claim. Section 1344 of United States Code Title 18 only outlaws knowing execution or attempts to execute "a scheme or artifice (1) to defraud a *financial institution*; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, *a financial institution*, by means of false or fraudulent pretenses, representations, or promises" (emphasis added). Plaintiff—although apparently a patron of BOA—is not a "financial institution," as required by the statute. Plaintiff plainly fails to state a claim for bank fraud.

Since both the mail fraud and bank fraud claims fail, and no other potential predicate offenses appear on the face of the Amended Complaint, Plaintiff's RICO claim must also be dismissed.

### D. Virginia Unfair Insurance Practices Claim

Plaintiff cannot state a claim under VUIPA. Although Virginia Code § 38.2-510 proscribes misrepresentations, failure to respond promptly to claims, arbitrarily and unreasonably refusing to pay claims, and not attempting to reach equitable settlements when liability is clear, among myriad other "unfair" practices, the Virginia General Assembly did not create a private right of action that Plaintiff may pursue. Va. Code Ann. § 38.2-510(B)

("No violation of this section shall of itself be deemed to create any cause of action in favor of any person other than the [State Corporation] Commission. . . ."). Again, Plaintiff cannot create a private right of action ipse dixit; neither can this Court. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); United States v. Hartwell, 448 F.3d 707, 717 (2006) (citing Kontrick v. Ryan, 540 U.S. 443, 453 (2004). Thus, any claim based on the statute fails.

### E. Virginia Consumer Protection Act

Unlike VUIPA, the VCPA, passed "to promote fair and ethical standards of dealings between suppliers and the consuming public," does provide for an individual cause of action for individuals injured as a result of a number of prohibited activities. See Va. Code Ann. § 59.1-197 (2008). The statute additionally provides for the awarding of "reasonable attorneys' fees and court costs," and, "[i]f the trier of fact finds that the violation was willful," treble damages may be awarded. Id. § 59.1-204. However, the VCPA does not aid Plaintiff. First of all, Plaintiff does not point the Court's attention to any "prohibited practices" outlawed by the statute. More importantly, the allegations do not support a cause of action under any of the "prohibited practices" that appear conceivably relevant. Thus, the claim based upon the VCPA will be dismissed.

### IV. *CONCLUSION*

In sum, (1) Plaintiff does not have a private right of action to pursue claims under the CPA, the FDCPA, 18 U.S.C. § 1341, 18 U.S.C. § 1344, or Virginia's Unfair Insurance Practices Act; (2) the allegations in the Amended Complaint do not satisfy Twombly and

Rule 8 as to the procedural due process, RICO, and VCPA claims; and (3) Plaintiff's allegations fail to satisfy Rule 9 and <u>Harrison</u> with regard to the RICO claim.

For the foregoing reasons, the Court will GRANT Defendants' Motions to Dismiss the Amended Complaint and DISMISS all other Motions as MOOT.

It will be SO ORDERED.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this 6th day of February 2009